# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| TROY UNDERWOOD and TRANSCEND TECHNOLOGIES GROUP, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | C.A. No. 18-347-RGA-MPT |
| BENEFIT EXPRESS SERVICES, LLC; LLR EQUITY PARTNERS IV, L.P.; LLR EQUITY PARTNERS PARALLEL IV, L.P. MICHAEL STERNKLAR; SCOTT EVANS, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| BENEFIT EXPRESS SERVICES, LLC, | ) ) | |
| Counterclaim-Plaintiff, | ) ) | |
| v. | ) ) | |
| TROY UNDERWOOD and TRANSCEND TECHNOLOGIES GROUP, INC., | ) ) ) | |
| Counterclaim-Defendants | ) ) | |

## **REPORT AND RECOMMENDATION**

### I.   **INTRODUCTION**

This matter arises from plaintiffs' Troy Underwood and Transcend Technologies Group, Inc.'s (collectively, "Plaintiffs") First Amended Complaint against defendants Benefit Express Services, LLC; LLR Equity Partners, IV, L.P., LLR Equity Partners Parallel IV, L.P., Michael Sternklar, and Scott Evans (collectively, "Defendants"). The initial complaint was filed on March 5, 2018 against Benefit Express, Services, LLC. The First Amended Complaint was filed on May 21, 2018 against Benefit Express

Services, LLC, LLR Equity Partners, IV, L.P., LLR Equity Partners Parallel IV, L.P., Michael Sternklar and Scott Evans. The First Amended Complaint alleges that certain of Defendants made false representations that were relied upon by Plaintiffs, and alleges breach of contract claims against Defendants. On June 26, 2018, Defendants filed a partial motion to dismiss Counts I, II, and III of the First Amended Complaint, which is pending before the court.

This Report and Recommendation addresses whether Plaintiffs adequately pled their allegations of fraud, aiding and abetting fraud, and negligent misrepresentation. For the reasons stated below, it is recommended that Defendants' partial motion to dismiss be granted as to Count II, and denied as to Counts I and III.

## II. BACKGROUND

### A. Parties

Plaintiff Troy Underwood is a citizen of the State of Nevada, residing in Reno. Plaintiff Transcend Technologies Group, Inc. is a California corporation with its principal place of business in Sacramento County, California.

Defendant Benefit Express Services, LLC, is an Illinois limited liability company with its principal place of business in Schaumberg, Illinois. Defendants LLR Equity Partners IV, L.P. and LLR Equity Partners Parallel IV, L.P. are Delaware limited partnerships with their principal places of business in Philadelphia, Pennsylvania. Defendant Michael Sternklar is Chief Executive Officer and Chairman of Defendant Benefit Express Services, LLC. Defendant Scott Evans is Chief Product Officer of Benefit Express Services, LLC.

2

## B. Background

Underwood founded Transcend Technologies Group, Inc. in 2002.[1] In 2007, Transcend Technologies Group, Inc. began doing business as BenefitsCONNECT.[2] BenefitsCONNECT is an online benefits enrollment and administration system that connects employer groups, insurance carriers, third party administrators, payroll vendors, and brokers.[3] In addition to managing BenefitsCONNECT, Underwood was working on a new venture named Aurora, which would function as an employee benefits agency.[4] In 2015, Aurora entered into a licensing agreement with BenefitsCONNECT that would give Aurora the right to use the BenefitsCONNECT source code (the "Source Code") on its own platform, once that platform became operational.[5]

In 2016, Plaintiffs and Defendants began negotiating a potential sale of BenefitsCONNECT to Benefit Express Services, LLC ("Benefit Express").[6] During negotiations and due diligence, Underwood worked closely with Sternklar regarding the transaction.[7] An asset purchase agreement was executed on August 4, 2016 (the "APA") between Plaintiffs and Benefit Express.[8] Per the APA, Plaintiffs agreed to sell

---

[1] D.I. 15 at 5.
[2] Id.
[3] Id.
[4] Id. at 6.
[5] Id.
[6] Id.
[7] Id.
[8] D.I. 25 at 2.

3

all assets of BenefitsCONNECT to Benefit Express, including all intellectual property and source coding.[9] On the same day the parties entered into the APA, and per Defendants' request, Underwood terminated the licensing agreement between Aurora and BenefitsCONNECT.[10]

On May 21, 2018, Plaintiffs filed their First Amended Complaint against Defendants for alleged fraud, negligent misrepresentation and breach of contract.[11] Count I alleges fraud against Sternklar and Benefit Express.[12] Count II avers claims of aiding and abetting fraud against LLR Equity Partners IV, L.P. and LLR Equity Partners Parallel IV, L.P. (collectively, "LLR") and Evans.[13] Count III asserts negligent misrepresentation against Sternklar and Benefit Express.[14] Count IV alleges breach of contract against Benefit Express, and Count V avers breach of the covenant of good faith and fair dealing against Benefit Express.[15]

Plaintiffs allege Sternklar misrepresented via an oral promise that he would license the Source Code to Underwood for use in the Aurora venture after the sale of BenefitsCONNECT to Benefit Express.[16] Approximately three weeks after the APA was executed, Plaintiffs contend Sternklar informed Underwood that he had "changed his mind" and would not execute a renewed licensing agreement with Plaintiffs.[17] Plaintiffs

---

[9] D.I. 15 at 8.
[10] *Id.* at 3.
[11] *Id.* at 2.
[12] *Id.* at 14.
[13] *Id.* at 15.
[14] *Id.* at 16.
[15] *Id.* at 17-18.
[16] *Id.* at 9.
[17] *Id.*

4

allege that their reliance on this oral promise resulted in their agreement to a lower sale price and the termination of the licensing agreement between Aurora and BenefitsCONNECT.[18] Plaintiffs further maintain Defendants are breaching their agreement by withholding a $2.9 million payment due to Plaintiffs under the APA.[19]

On June 25, 2018, Defendants filed the instant partial motion to dismiss Counts I, II and III of the First Amended Complaint pursuant to Fed. R. Civ. P. 9 and 12(b)(6).[20] Defendants allege Plaintiffs' fraud and misrepresentation claims are insufficient in light of the APA's integration clause, and Plaintiffs failed to sufficiently plead the elements of the aiding and abetting fraud claim.[21]

## III. STANDARD OF REVIEW

### A. Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) governs a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. The purpose of a motion under Rule 12(b)(6) is to test the sufficiency of the complaint, not to resolve disputed facts or decide the merits of the case.[22] "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."[23] A

---

[18] *Id.* at 2.
[19] *Id.* at 3.
[20] D.I. 24.
[21] D.I. 25 at 2.
[22] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).
[23] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotations and citations omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.").

5

motion to dismiss may be granted only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."[24] While the court draws all reasonable factual inferences in the light most favorable to a plaintiff, it rejects unsupported allegations, "bald assertions," and "legal conclusions."[25]

To survive a motion to dismiss, a plaintiff's factual allegations must be sufficient to "raise a right to relief above the speculative level . . . ."[26] Plaintiffs are therefore required to provide the grounds of their entitlement to relief beyond mere labels and conclusions.[27] A claim must allege, "enough facts to state a claim to relief that is plausible on its face."[28] A claim has facial plausibility when a plaintiff pleads factual content sufficient for the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[29] Once stated adequately, a claim may be supported

---

[24] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (citing *Burlington*, 114 F.3d at 1420).

[25] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *see also Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (citations omitted) (rejecting "unsupported conclusions and unwarranted inferences"); *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not . . . proper to assume [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged.").

[26] *Twombly*, 550 U.S. at 555 (citations omitted); *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

[27] *See Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[28] *Twombly*, 550 U.S. at 570; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) ("In its general discussion, the Supreme Court explained that the concept of a 'showing' requires only notice of a claim and its grounds, and distinguished such a showing from 'a pleader's bare averment that he wants relief and is entitled to it.'") (quoting *Twombly*, 550 U.S. at 555 n.3).

[29] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

by showing any set of facts consistent with the allegations in the complaint.³⁰ Courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record when reviewing a motion to dismiss.³¹

### B. Fed. Rule Civ. P. 9(b)

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting [the] fraud or mistake."³² In doing so, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."³³ The purpose of this heightened standard is "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."³⁴

## IV. ANALYSIS

### A. Count I - Fraud Against Sternklar and Benefit Express

The elements of a fraud claim under Delaware law are as follows:

> (1) Defendant made a false representation, usually one of fact; (2) Defendant knew or believed that the representation was false, or was made with reckless indifference to the truth; (3) Defendant intended to induce Plaintiff to act or to refrain from acting; (4) Plaintiff's action or inaction was taken in justifiable reliance upon the representation; and (5) there was damage to Plaintiff as a result of such reliance.³⁵

Plaintiffs allege that Sternklar made an intentional false oral promise that

---

³⁰ *Twombly*, 550 U.S. at 563.
³¹ *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994).
³² FED. R. CIV. P. 9(b).
³³ *Id.*
³⁴ *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984).
³⁵ *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 475 (Del. 1992).

7

Plaintiffs would be able to license back the Source Code after the APA was executed when Defendants had no intention of doing so.[36] Specifically, Plaintiffs allege Sternklar promised that if Plaintiffs terminated the licensing agreement between Aurora and BenefitsCONNECT prior to the execution of the APA, after the sale, Benefit Express would license the Source Code back to Plaintiffs for use in the Aurora venture, as long as Plaintiffs retained no ownership rights and Aurora did not compete with Benefits Express.[37]

Plaintiffs further allege that Sternklar knowingly made this false promise with the intent of inducing Plaintiffs to cancel the licensing agreement with BenefitsCONNECT and to sell BenefitsCONNECT for a lower price.[38] Plaintiffs contend they reasonably relied on these false misrepresentations and promises when they entered into the APA with Defendants, and maintain they would not have sold BenefitsCONNECT to Defendants, particularly at the amount they did, and would not have terminated the licensing agreement had they known they would not be able to license back the Source Code after execution of the APA.[39]

Defendants allege that Plaintiffs cannot maintain a fraud claim because as a party represented by counsel, they could not have reasonably relied on any oral promises that were not memorialized in the heavily negotiated APA.[40] Defendants point to the integration clause and other language in the APA to show that the parties

---

[36] D.I. 15 at 14.
[37] D.I. 29 at 3.
[38] D.I. 15 at 14.
[39] *Id.* at 15.
[40] D.I. 25 at 6.

8

expressly agreed that the APA contained all of the terms of the sale of BenefitsCONNECT to Benefit Express, and such terms could only be modified in a writing, signed by both parties.[41]

Defendants further assert that (assuming solely for the purpose of this motion that the allegation of the existence of Sternklar's oral statement is true) Plaintiffs do not sufficiently plead that Sternklar, at the time the alleged oral promise was made, knew the statement to be false, since it is alleged that Sternklar simply "changed his mind" about licensing the Source Code to Plaintiffs after the APA was executed.[42]

Assuming for the purposes of this motion that Plaintiffs' allegations are true, Plaintiffs have adequately pled enough facts and specificity with respect to a fraud claim. While Delaware courts generally "disfavor allegations of fraud when the underlying utterances take the form of unfulfilled promises of future performance," a complaint that alleges facts with sufficient particularity may "support a reasonable inference that Defendants made promises they had no intention of keeping when they made them."[43] Further, it is recognized that "less particularity is required when the facts lie more in the knowledge of the opposing party than of the pleading party."[44]

Delaware courts have held that integration clauses may not preclude a plaintiff's reasonable reliance on a fraudulent misrepresentation.[45] Whether Plaintiffs' reliance on the oral statement was reasonable given the integration clause of the APA is a question

---

[41] *Id.*
[42] *Id.* at 7-8.
[43] *TrueBlue, Inc. v. Leeds Equity Partners, IV*, LP, C.A. No. N14C-12-112 WCC CCLD, 2015 WL 5968726, at *6 (Del. Super. Ct. Sept. 25, 2015).
[44] *Id.*
[45] *Id.* at 9.

9

of fact that is "generally not suitable for resolution on a motion to dismiss."[46]

Here, Plaintiffs provide enough facts for an inference that Sternklar had motivation to make the statements alleged in order to gain an advantage in negotiation of the APA. Further, since Sternklar alone made the statements about the Source Code both before and after the execution of the APA, the facts lie more within the knowledge of Defendants.

Therefore, this court recommends that the partial motion to dismiss as to Count I be denied.

### B. Count II - Aiding and Abetting Fraud Against LLR and Scott Evans

Under Delaware law, to prove a claim of aiding and abetting, Plaintiffs must demonstrate that "(1) a wrongful act was committed; (2) the defendant had knowledge of the act; and (3) the defendant knowingly and substantially participated in or provided substantial assistance of the wrongful act."[47]

Plaintiffs allege LLR and Evans knew fraud was being committed, and gave substantial assistance and encouragement to Benefit Express and Sternklar in effectuating such fraud.[48] Specifically, Plaintiffs allege LLR aided in negotiations for and funded the entire purchase of BenefitsCONNECT, and Evans, as a former employee of Plaintiffs, communicated with a third party technician regarding an Aurora incomplete server installation, and attempted to turn allegedly innocuous statements by the technician into "ammunition for Defendants to use against Plaintiffs."[49]

---

[46] Id. at 7.
[47] Capitaliza-T Sociedad De Responsabilidad Limitada De Capital Variable v. Wachovia Bank of Delaware Nat'l Ass'n, 2011 WL 864421, at *4 (D. Del. Mar. 9, 2011).
[48] D.I. 15 at 16.
[49] D.I. 29 at 5.

10

Defendants allege there is no basis for aiding and abetting fraud claims against either Evans or LLR.[50] Defendants assert Plaintiffs do not allege any connection between Evans and the alleged fraudulent statements about the licensing of the Source Code, and do not offer anything other than their information and belief that solely by negotiating and funding the purchase of BenefitsCONNECT, LLR was aware of the fraud and thus gave assistance in effectuating fraud.[51]

Assuming Plaintiffs' allegations against Evans and LLR are true, it is difficult to find a connection between Evan's conversations with a software technician, LLR's negotiation of and funding of the BenefitsCONNECT purchase, and Sternklar's alleged promise to license back to Aurora the Source Code and later reneging on that promise. Plaintiffs fail to allege sufficient facts for the court to reasonably infer that Evans and LLR knew of the fraudulent statements and provided substantial assistance for Sternklar's statements.

Therefore, this court recommends that the partial motion to dismiss Count II be granted.

**C. Count III - Negligent Misrepresentation Against Sternklar and Benefit Express**

In order to sustain a claim for negligent misrepresentation under Delaware law, plaintiffs must prove "(1) a pecuniary duty to provide accurate information, (2) the supplying of false information, (3) failure to exercise reasonable care in obtaining or communicating information, and (4) a pecuniary loss caused by justifiable reliance upon

---

[50] D.I. 25 at 10.
[51] Id.

11

the false information."[52]

Plaintiffs allege Sternklar made a promise regarding Plaintiff's relationship with Benefit Express (specifically that Plaintiffs would be allowed to license back the Source Code after the APA execution) that was false and misleading.[53] Further, Plaintiffs allege they reasonably relied on the promise as they were unaware of its falsity.[54] As stated previously, Plaintiffs allege that had they known Defendants would not license back the Source Code after the execution of the APA, Plaintiffs would not have sold BenefitsCONNECT to Benefit Express for the agreed upon price, and would not have cancelled the licensing agreement with BenefitsCONNECT.[55] Plaintiff alleges damages due to these actions.[56]

Similar to the fraud claim, Defendants allege Plaintiffs cannot state a cause of action for negligent misrepresentation because they could not reasonably and justifiably rely upon Defendant's alleged oral promise regarding the licensing of the Source Code when the APA makes no reference to that alleged agreement.[57] Defendants also contend that Plaintiffs did not sufficiently articulate how Defendants acted without reasonable care when they conclude that Defendants never intended to fulfill their alleged oral promise to allow Plaintiffs to license back the Source Code.[58] Additionally, Defendants argue that Plaintiffs did not establish that the requisite duty was created

---

[52] *Outdoor Technologies, Inc. V. Allfirst Financial, Inc.,* No. 99C-09-151 (JRS), 2001 Westlaw 541472 at *5 (Del. Super. Ct. 2001).
[53] D.I. 15 at 16-17.
[54] *Id.* at 17.
[55] *Id.*
[56] *Id.*
[57] *Id.* at 11.
[58] *Id.*

12

between the parties.[59]

Assuming for the purposes of this motion that Plaintiffs' allegations are true, Plaintiffs sufficiently pled all of the elements of a claim of negligent misrepresentation. Plaintiffs allege that the business relationship between the parties in negotiating the APA created a pecuniary duty sufficient to allege negligent misrepresentation. Delaware common law contemplates a duty of disclosure "will arise when the parties are in the midst of a 'business relationship' from which they expect to derive 'pecuniary benefits'."[60] A duty exists under Delaware common law to "provide accurate information."[61] Here, Plaintiffs allege reliance on information they received during negotiation of a transaction from which they expected to benefit financially, and the information allegedly changed abruptly after the APA was executed, when Sternklar purportedly changed is mind.

Therefore, this court recommends that the partial motion to dismiss with respect to Count III be denied.

## V. RECOMMENDATION DISPOSITION

Consistent with the findings herein, it is recommended that:

Defendants' partial motion to dismiss (D.I. 24) be denied with respects to Counts I and III, and granted with respect to Count II.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72(b)(1), and D.Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served a copy of this

---

[59] D.I. 24 at 11.
[60] *Outdoor Technologies, Inc. V. Allfirst Financial, Inc.*, No. 99C-09-151 (JRS) at *5.
[61] *Id.*

Report and Recommendation.[62] These objections and response to the objections are limited to ten (10) pages each.

The parties are directed to the Court's standing Order in Non-*Pro Se* matters for Objections Filed under FED. R. CIV. P. 72, dated October 9, 2013, a copy of which is available on the Court's website, www.ded.uscourts.gov.

Date: December 28, 2018                      /s/ Mary Pat Thynge
                                                                Chief U.S. Magistrate Judge

---

[62] FED. R. CIV. P. 72(b)(2).